SIDNEY ROGERS and others,

v.

HALSEY ROGERS and others.

A person by his will, appointed an executor, who afterwards became a judgment creditor of the testator. When the testator subsequently died, he left debts unpaid, and an estate consisting of personal property and lands : the personal estate was insufficient to pay the debts : and the person appointed executor, accepted that trust and acted as sole executor. This executor caused all the lands of the testator to be sold, under an execution issued upon the judgment held by himself, as a creditor; and he became the purchaser.

The sale and purchase were vacated, at the instance of other persons interested in the estate of the testator.

In such circumstances, an executor is charged with a trust affecting the lands; and if he purchases the lands, the sale will be annulled, as in other cases of trustees purchasing the subjects of their trusts.

THE bill in this cause was filed to vacate a sale made un- 1825.
der an execution issued by the direction and procurement of  5th & 6th Sep-
the defendant Halsey Rogers, on a judgment obtained against  tember.
Thomas Rogers the ancestor of the complainants, in favor of Trustees.
James Rogers; which judgment was assigned to Halsey Ro- trustees.
gers, who at the time of the sale, was the sole executor of the
last will and testament of Thomas Rogers ; and to obtain an
account of the trust and acts of the executor.

In 1803, Thomas Rogers made his will, whereby he de-
vised a lot of land of one hundred acres, in these words :
" I give devise and bequeath unto my son Thomas Rogers
" junior, for and during his natural life, and to the children
" of his body lawfully begotten, after his decease, all that cer-
" tain lot &c. to have and to hold the said last mentioned prem-
" ises unto my said son Thomas Rogers junior, for and during
" his natural life, and after his decease, to the heirs of his bo-
" dy lawfully begotten, and to their heirs and assigns for
" ever." The testator also devised another lot of two hun-
dred acres to his son James : and after several other specific
devises of real property and bequests of personal estate, he
devised and bequeathed all the residue of his estate real and
personal, to his seven children then living, to be equally di-
vided between them, share and share alike. The testator
subsequently to the making of his will, purchased and be-
came the owner of two lots of land of considerable value. He
died in 1816. Shortly after his decease, Halsey Rogers prov-

ROGERS
v.
ROGERS.

ed the will, and took upon himself the execution of the same, as sole executor. Thomas Rogers junior and James Rogers, two of the sons of the testator, to whom specific devises had been made by the will, died, during the life of the testator. Thomas Rogers junior left three children, two of whom are complainants in this cause. The personal property of which the testator died possessed, was sold at public auction, by the executor; excepting that part thereof which was specifically bequeathed to the widow, valued at nine hundred and sixty dollars; which she was permitted to retain, and still possesses. The avails of the sale were applied to the payment of the debts of the testator. All the real estate of the testator, as well that devised as that acquired after the making of the will, was sold in 1820, at a sheriff's sale by virtue of an execution issued by the direction and procurement of the defendant Halsey Rogers, on a judgment rendered in 1813, in favor of James Rogers, against the testator. This judgment was obtained upon a bond executed by the testator to James Rogers, whose executors had caused a suit to be brought on the bond: and Halsey Rogers had in November 1813, bought and obtained an assignment of the judgment. The amount claimed to be due on the judgment, at the time of the sheriff's sale, was three thousand six hundred and sixty one dollars; but the complainants insisted, that nothing was justly due on the judgment. Halsey Rogers became the purchaser of the whole of the real estate, at the sheriff's sale, for two thousand two hundred and seventy dollars; and he received a deed from the sheriff, in pursuance of the sale. The value of this real estate at the time of the sale, was between nine and ten thousand dollars. It consisted of various tracts of land, two of which were sold separately; but the rest and the most considerable parts were sold in one mass. The complainants alleged, that the judgment had not been regularly revived, before the sale.

These are the most material facts of the case, briefly stated. The cause was now heard, at large, upon the pleadings and proofs.

Mr. WAIT opened the cause on the part of the complainants; and made the following points: that by the words of

the devise to Thomas Rogers junior, a remainder was created to his children: that the judgment under which the property was sold, was not duly revived: that there was nothing due on the judgment, at the time of the sale: that the sale was invalid, because the property was sold in mass, though consisting of various and separate parcels; because the disparity between the amount of the price given and the value of the property sold, was so great as to be evidence of fraud; and because Halsey Rogers was a trustee of the real as well as the personal property, and could not become a purchaser.

Mr. WESTON for the defendants. Halsey Rogers by the purchase of the judgment of James Rogers against the testator, became the creditor of the testator; and as such creditor had a right to enforce his legal remedies and to raise the moneys due upon the judgment, by the sale of the property of the testator; and for that purpose, he might become a purchaser. His assumption of the office of executor in 1816, after he became the owner of the judgment, could not divest his rights as a creditor. As executor, Halsey Rogers was not prohibited from purchasing the property of the testator, for it is a well settled principle, that at a judicial sale, the executor may buy the goods of the testator, as well as another. Toller's law of executors 186.

The principle established in the case of Davoue v. Fanning, 2 Johns. ch. 252. does not impugn this doctrine. There, the purchase was made by a trustee of the real estate. Here, the defendant is not a trustee of the real estate; no trust is created by the will; the property is not devised to the defendant in trust; nor is he empowered by the will, to sell the real estate, for the payment of debts, or otherwise. As executor, he had no control over the real estate. That estate went to the devisees. It is only where the purchaser stands in the character of trustee, that his purchase is declared void. This character is the reason of the rule; and when the reason does not apply, the rule fails. Besides, this sale was made under process of law, by a public officer, and it has been decided, that a trustee may purchase at a sale not made by himself. 11 Johns. Rep. 456. A deputy sheriff representing a creditor, may purchase at a sale conducted by another deputy;

66

**1825.**

ROGERS
v.
ROGERS.

although the statute prohibits purchases by sheriffs or deputies. 3 Cowen's Reports 96. Such a purchase was sanctioned, because it did not violate the spirit and intent of the law. The deputy purchasing did not upon that occasion, act in his capacity as a sheriff's officer; nor did the defendant here, sell the property in the character of a trustee. This sale was not in pursuance of a power created by the will; but was a judicial sale, under the direction of a public officer.

The complaint that the property was sold in mass, is not supported by the proofs. The property was sold in three parcels; and though one of the parcels consisted of several lots, the deputy in the exercise of the discretion vested in him by law, probably judged, that the interests of the persons concerned in the lands, would be best promoted by selling those lots, together. The defendant gave no direction as to the mode of conducting the sale; and unless actual fraud is shown, the court will presume the act of the officer to have been fair, and will not set aside the sale. Besides, this is not the proper forum to correct the proceedings of the officer. Application should have been made to the court from which the process issued, to control the officer in the exercise of his discretion, or to correct his proceedings, if he had erred. In all events, this court will not set aside the sale, as to the two lots which were sold in separate parcels, even if the sale of the third parcel embracing several lots, should be deemed to have been improperly conducted. Neither can the complainants object in this court, that the judgment was not regularly revived: no specific charge to that effect, was made in the bill, and this objection will therefore, not be regarded, though evidence of irregularity has been given. Whether the judgment was revived or not, is not to be examined here. 13 Johns. Rep. 549. It is the judgment of a court, and is operative until set aside. 1 Johns. cases, 436. 14 Johns. Rep. 77. The execution was only voidable, and not void; and until set aside, the sale must stand good. 16 Johns. Rep. 573. 2 Binney's Rep. 40. 1 Ld. Raym. 590. 13 Johns. Rep. 97. 3 Johns. ch. 279. 4 Johns. ch. 92.

The property sold is proved to be worth more than the sum due on the judgment; but mere inadequacy of price will

not vitiate a sale made by public auction. 11 Johns. Rep. 555. When the disparity between the value of the property sold and the price given, is so great as to shock every sense of justice and feeling of propriety, it is considered evidence of fraud; and on that ground, the sale is avoided; but here the disparity is not so great, as to justify the conclusion of fraud.

The complainants have no claim under the devise to Thomas Rogers junior. By his decease during the life of the testator, the devise to him lapsed. By the will, an estate for life was devised to him, which was an estate of freehold; and by his death before the estate vested in him, the rights of his children under the will, were lost. 6 Cruise's Dig. tit. Devise, ch. 9. sect. 75. ch. 12. sect. 23. 24. Fearn's Cont. Rem. 107. 109.

The defendant Halsey Rogers as executor, was not bound to take the personal property specifically bequeathed to the widow, and apply it to the payment of the debts of the testator. The will had directed that the widow should possess this property during her life; and the executor could not control the intention of the testator. The law does not require a proceeding so barbarous, as that the executor should strip the widow of her household furniture and other articles of absolute necessity, for the payment of debts, when there is other property which may be resorted to for that purpose. The rule in marshalling assets, is, that the personal property not specifically devised, shall be first taken; next, lands ordered to be sold for payment of debts; next, property charged with payment of debts; then, the real estate undisposed of; and lastly, bequests and devises must contribute ratably, to the payment of debts. 3 Johns. ch. 321. 325.

Mr. Spencer also for the defendants. Are the words in the devise to Thomas Rogers junior in relation to his children, words of limitation or of purchase? I contend, that they are words of limitation. 2 Black. Comm. 172, note 3, shows conclusively, that by this devise, the whole estate was given to the person named. In the construction of a deed, the habendum controls; and full force and effect must be given to it. 2 Black. Comm. 298. The habendum here, differs from the premises. Christian in his note on Blackstone,

puts the very case now under consideration. Shelly's case 1 Coke 104, was decided on the principle, that where a freehold is granted and the word heirs is used, it is a word of limitation, and not of purchase. An estate for life is a freehold. 2 Black. Comm. 104. Thomas Rogers junior had he survived the testator, would have taken the estate, as a fee tail general; which by our statute abolishing entails, is converted into an absolute estate of inheritance. The habendum, being the last expression of the testator's will, controls the premises, which precede it; and the consequence here is, that the devise to Thomas is lapsed.

Under the devise of the rest and residue, the seven children of the testator, if living at the time of his death, would have taken, as tenants in common. Two of the children having died before his decease, the five survivors took each, one seventh of the whole estate devised; and each took one seventh of the two shares lapsed by the decease of Thomas and James, the sons of the testator, as if no devise had been made of those shares, and the testator as to that portion of his property, had died intestate. In respect to the two lots acquired by the testator subsequently to the making of his will, the heirs of the testator are entitled to one seventh of those lots, per stirpes. 1 P. Wms. 700. 1 Atk. 494. 1 Vesey senr. 542. 2 Str. 807. 1 Equity Abr. 243. 2 Equity Abr. 443. 3 Bacon's Abr. tit. Exr. L. 3.

If the Chancellor should be of opinion, that the real estate of the testator which was sold under the execution, ought to have been sold in distinct parcels, a discrimination will be made between the sales of the several parcels; and he will affirm the sale, as to those lots which were sold separately; even should he vacate the sale of those which were put up in mass. 14 Johns. rep. 223.

Halsey Rogers was not a trustee of the real estate. As executor he had no control over it. He took the assignment of the judgment in the life of the testator, at his request: no fraudulent intent can therefore, be imputed to this defendant. He had no right to apply the personal property bequeathed to the widow, to the payment of debts. Personal property specifically bequeathed, can not be touched for the payment of

debts, while there remains a residuary real estate undisposed of. Toller 421. Ambl. 127. 1 P. Wms. 201. 3 P. Wms. 324. 1 Madd. ch. 501. 1 P. Wms. 729. 2 P. Wms. 81. 190. And the reason of this is obvious: for if personal property specifically bequeathed is taken for the payment of debts, the legatee has a right to call on the residuum to refund. The court therefore, to prevent the inconvenience which might ensue to the legatee, will not require the executor to take the personal property from the hands of the legatee, when the unavoidable consequence will be, that the residuary property must refund.

Mr. Foot for the complainants, in reply. The devise to Thomas did not lapse by his death. An estate in remainder, was created by the will and given to the children of the devisee. The devise is to the children of the body of Thomas, lawfully begotten; and the estate given to them, did not unite with the prior estate of freehold given to their father. The terms heirs and issue, are words of limitation; but the word children, is a word of purchase. In the premises, words of purchase are used: in the habendum, words of limitation. By the premises, an estate in fee was given to the children, which can not be divested by the words in the habendum. Such would be the construction put upon a deed; and a more liberal construction will govern in the case of a will, where the intent of the testator is always sought and carried into effect. That intent in the present case, manifestly was, to dispose of the estate to the grandchildren, in case of the death of the son. If the children were obliged to derive their estate through their father, the counsel for the defendants would be right in the ground which they assume; but the question being, what estate the children take under the will, the adverse counsel are entirely wrong. 4 Johns. rep. 61. 2 Black. Comm. 172. note 3.

Mr. Foot then went into a particular examination of the testimony, to show, that at the time of the sale, the judgment had been satisfied. But if the judgment was not in fact paid, Halsey Rogers should have resorted for satisfaction of his debt, to the lands acquired by the testator, after the making of his will; which Mr. Foot contended, would have been

*1825.*

ROGERS
v
ROGERS.

1825.

Rogers
v
Rogers.

more than sufficient, to answer any balance that could be due on the judgment. He also contended, that the enormous disparity between the price given at the sale and the value of the property, was evidence of fraud; as was also the sale of the real estate in mass, while it consisted of distinct parcels. Such a sale he insisted, tended to prevent fair competition; was oppressive; and therefore, not to be tolerated. 1 Johns. ch. 502. 505. 18 Johns. rep. 362. 1 Binney 61.

Halsey Rogers must be considered as standing in the relation of trustee to the persons interested in the real estate of the testator; and if so, the sale to him, must be avoided. The case of Davoue v. Fanning settles the question. By the assumption of the character of executor, Halsey Rogers became a trustee of the real as well as the personal estate; the debts of the testator exceeding in amount, the value of the personal property. As executor, he was bound to manage the estate to the best advantage of all concerned; and not as a creditor, to sacrifice it. By taking upon himself the office of executor, he waved his right as a creditor, so far that he could not become a purchaser: and as a creditor, he could not do what he was prohibited from doing as executor.

7th October.

THE CHANCELLOR. On the sixteenth day of April 1803, Thomas Rogers made his will; by which he appointed Alpheus Doty, Thomas Littlefield and Halsey Rogers executors. In the year 1813, the executors of James Rogers recovered a judgment in the supreme court, against Thomas Rogers: and on the seventeenth day of November 1813, this judgment was assigned to Halsey Rogers; who thus became a creditor of Thomas Rogers, the testator. On the twentieth day of September 1816, Thomas Rogers died; being indebted to several persons, leaving some personal estate and a considerable estate in lands, and leaving his will in force. It appears, that the personal estate of the testator, was not sufficient to pay his debts. Doty and Littlefield have never acted as executors. Halsey Rogers holding the judgment which had been assigned to him, took upon himself the execution of the will; as executor, he took into his possession the personal estate of the testator; and he alone, has

acted as executor. In 1820, Halsey Rogers caused an execution to be issued on the judgment held by him, against the lands of Thomas Rogers; and on the twenty fifth day of March in that year, the sheriff of Saratoga acting under the execution, sold three tracts of land belonging to the estate of Thomas Rogers; and Halsey Rogers became the purchaser. The price bidden and given by Halsey Rogers at the sheriff's sale, was two thousand two hundred and seventy dollars. The true value of these lands at that time, is stated variously, by different witnesses; but according to most of them, the value was not less than nine or ten thousand dollars; and according to all, it greatly exceeded the price for which the lands were purchased by Halsey Rogers from the sheriff. The complainants contend, that the sale and purchase should be vacated, for their benefit; and Halsey Rogers insists, that he acquired a perfect title to these lands, by his purchase from the sheriff.

When Halsey Rogers assumed the office of executor, he took upon himself all the duties of that trust; and he voluntarily, became a trustee for all persons interested in the estate of Thomas Rogers. He became accountable for all the duties of an executor, not only to the creditors of the testator, but also to the legatees and devisees, who are entitled to the estate of Thomas Rogers, after payment of debts.

In this situation, Halsey Rogers was both debtor and creditor. He was debtor as executor, to all the creditors of Thomas Rogers; he was himself a creditor by the judgment; and he was thus, in respect to his own demand upon the judgment, debtor as executor, and creditor in his own right.

If the personal estate of Thomas Rogers had been sufficient to pay his debts, it would have been the duty of Halsey Rogers as executor, to pay the debt to himself from the personal fund. He could not have been allowed in the exercise of his right as creditor by judgment, to levy the debt to himself from the lands of the testator, while it was his duty as executor, to discharge that debt from the personal estate. Such an exercise of his right as a creditor, would have been subversive of his duty as executor: and it is clear, that in

such a case, his right as a creditor must have yielded to the duties of the trust which he assumed.

But the personal estate was inadequate to the payment of the debts of the testator. Halsey Rogers being both executor and creditor, might have retained from the personal estate, in discharge of the debt to himself, against any creditor of equal degree. He had also a remedy by action at law, against the heirs and devisees of Thomas Rogers, his debtor. He might also have instituted a suit in equity, to obtain satisfaction and just contribution from all who were interested in the personal and real estate of Thomas Rogers. These measures were in his option, as a creditor; but there was another, which while it would have produced satisfaction to him as a creditor, was his special duty, as executor. It was to apply to the surrogate, for an order to sell so much of the real estate, as would be sufficient to discharge the debts which could not be satisfied from the personal fund. He resorted to none of these remedies; but while he was charged with the duty of pursuing proper measures for the payment of all the debts of the testator, he as creditor by judgment, issued an execution, upon which a large part of the real estate of Thomas Rogers was sold, and he himself became the purchaser, for a price far less than the true value of the lands purchased. If this transaction is supported, he gains and the other parties interested in the estate of Thomas Rogers, lose about three fourths of the true value of these lands.

A trustee can gain no advantage to himself, to the detriment of those for whom he holds his trust. This rule of equity is applied to the transactions of the trustee, according to their nature and the circumstances of different cases, in such manner as to give efficacy to the principle upon which it is founded. The most frequent application of this doctrine, is to cases, in which the trustee purchases the subject of his trust. In such cases, equity vacates the sale, at the option of those for whom the trust is held, and considers both the purchaser and the subject still charged with the trust. This doctrine is undoubted; and it has often been enforced in this court. It was fully examined by the late chancellor, in the case of Davoue against Fanning, 2 John. ch. 252. In that

case, the late chancellor traced the reasons of this doctrine, and clearly displayed its foundations. He also applied the same principle, in the case of Van Horn against Fonda, 5 John. ch. 388.—2 Fonblanque, b. 2. c. 7.—2 Kames' Principles of equity, 87.

This rule is founded in the most salutary policy. It justly considers the trustee, as holding an office, not for his own advantage, but for the benefit of the true owners of the subject held in trust. The objects of the rule are, to secure fidelity on the part of the trustee, and to preserve the interests of those whose rights are confided to his care. To effect these objects, equity does not inquire for fraud, on the part of a trustee, who attempts to purchase the subject of his trust; but it removes temptation, by declaring him incapable of making a purchase, which shall bind those for whom he is entrusted; and it gives to them the option to vacate or affirm the purchase of their trustee. They have no interest to vacate his purchase, where the subject has been sold for its full value; and where the subject has been purchased by the trustee for less than its value, it would be unjust, that the trustee who is both seller and buyer while he is trustee, should by his own acts, make gain to himself, and cast loss upon those whose interests he is bound to protect. This rule imposes no hardship on the trustee; it prevents collision between his interest and his duty; and it precludes a difficult and uncertain inquiry into his motives. It is necessary for the security of those, whose property is held in trust; and it produces practical and effectual justice.

In this case, it is said, that Halsey Rogers though a trustee of the personal estate of the testator, was not a trustee of the lands. The personal estate being insufficient to pay the debts of the testator, it was necessary, that the lands or some of them, should be sold for the satisfaction of creditors. All persons interested in the lands, were therefore interested that the personal effects should be fully applied to the payment of debts. It was the duty of this executor, to apply the personal estate in payment of debts; and next and equally, it was his duty, to resort to the lands in the manner prescribed by law, to raise a sum sufficient to pay the debts which might

67

remain unpaid from the personal fund. When the personal fund is deficient, and there are lands of the deceased debtor, the executor or administrator is bound to apply to the surrogate for an order to sell the lands. Such an application is by our statute, made the absolute duty of an executor or administrator: and by this simple and excellent method, all the creditors of a deceased debtor may obtain satisfaction from his real estate, without litigation or any hostile proceeding. The executor or administrator is by our law, made the agent to effect this object. It is his duty to institute this proceeding, and to prosecute it, to effect; and this measure is often, the most important duty of his office. In this case, the personal estate of Thomas Rogers was the primary subject of the trust of this executor; and the land being the secondary fund for the payment of debts, was the secondary subject of his trust. This executor was a trustee for the payment of debts from both funds; and his trust embraced an administration not only of the personal estate, but also of the lands, so far as the lands were necessary for the payment of debts. As executor, he had no legal estate in the lands; but as executor, he had a power over the lands and a duty concerning them, which for every purpose of justice, constituted a trust and him a trustee, of those lands. Being thus in substance, a trustee of the lands, he was bound so to administer and apply them to the payment of debts, that he should not gain and those interested in the lands should not lose by his acts: and as a trustee, he is subject to the principle of equity, which gives to those who are beneficially interested, the option to affirm or reject a purchase made by the trustee.

Still, it is urged, that this was a sale by legal process. "Where a fieri facias comes to the sheriff, to sell or levy a "debt of the testator's goods, the executor may buy the "goods, as well as another." Year book, 20 H. 7. 5. 1.— 1 Wentworth, 91.—Toller, 186. This law supposes the ordinary case of an adverse execution by a creditor of the testator; and it can not be applicable to a case where the executor is himself the creditor. It supposes a case free from fraud or abuse of trust. It does not exempt the executor from any of the duties of his office, or authorise him to pur-

chase in his own right, to the detriment of interests which are confided to him, in his character of executor. When a judgment creditor, being also executor, causes the goods of the testator to be sold by execution, he does an act which may lead to an injurious sacrifice of their value, and is wholly unnecessary. The executor may without any legal proceeding, retain in discharge of the debt to himself; and if it is necessary, for the discharge of the debt, that the goods should be sold, he as executor, may sell. It is his duty to sell, in the most advantageous manner ; and whether he purchases from himself, or upon a sale made by the sheriff, at his instance, he is a purchaser while he is a trustee of the subject sold.

Though the sale of these lands was public, and Halsey Rogers was the highest bidder, yet it was a sale by his own procurement; and he purchased the lands for about one fourth of their value, while he stood in a relation of trust to all persons interested in the subject. A sale by auction, does not give sanction to a purchase made by a trustee ; and a sale by legal process, can not sanctify the purchase made in this instance. Halsey Rogers was the author of this sale, as well as the purchaser ; and the sale and purchase were made, while it was his duty to resort to the lands, in his character of executor. He became a purchaser upon execution, when his duty required, that he should have been a seller, as executor. Though he was a creditor by judgment, he was not at liberty to wield his judgment to the injury of the interests, which he as executor, was bound to protect. Had he resorted to the lands in his character of executor, he might have obtained payment as a creditor ; his duty as executor would have been fulfilled ; and his rights would have been satisfied, without repugnance to his duties. This sale having been made at his own instance, while he was in effect, a trustee for all persons interested in the lands which he purchased, and while it was his special duty to convert the lands of Thomas Rogers into money, in a different manner, the case is within the principle of equity which forbids a trustee to do any act beneficial to himself and detrimental to those for whom he is trustee ; and

it can not be exempted from the effect of that principle, by the forms of a sale upon his own execution.

In the case of Davoue against Fanning, the executor was authorized to sell, by the will of the testator; he sold; he purchased for his wife; and the purchase was vacated, for the benefit of the persons interested in the estate. In the case now before the court, the executor was bound by a law of the state, to obtain a power to sell, for the payment of debts; he did not obtain such a power; he caused a sale to be made in another manner; and he became the purchaser. Here, was not only a purchase by the executor, but the sale itself, was a violation of his duty, as executor.

If Halsey Rogers had not accepted the trust of executor, he would have been at full liberty, to pursue all his remedies for satisfaction of the judgment; and if loss to others had followed the exercise of his rights as a creditor, he would not have been responsible. But when he accepted a trust which imposed on him the duty of taking every legal and prudent measure to pay the debts of Thomas Rogers, from the personal and real estate, he was no longer at liberty, to exert his rights as a creditor, in opposition to his duties as executor. He continued a creditor, but he relinquished any right of a creditor, which might interfere with his duty as a trustee. Having accepted the trust, he could not in the character of creditor, do any act which should subvert or impair the interests of those for whom he was trustee. In the ordinary case of a debt from one person to another, each party may guard his own interests; and the debtor may in general, protect himself from loss. Though the creditor may pursue his legal remedies, without regard to any loss which may result to his debtor from adverse proceedings, the debtor may also, exercise his rights and his prudence, to prevent a sacrifice of his property. But here, the two characters of debtor and creditor, were represented in one person; and the due vigilance of adverse parties could not be exerted to guard opposite interests. So far as the rights of Halsey Rogers as a creditor, and his duties as a trustee, were in conflict with each other, his rights were yielded to his duties. It is therefore, in vain, that the rights of Halsey Rogers as a creditor, are ad-

vanced, in opposition to his duties, as executor. A sale by execution, produces a sacrifice of value, more frequently, than any other mode of selling; this sale produced such a sacrifice; he became the purchaser; and he can not retain the advantage of this purchase.

This purchase having been made by Halsey Rogers, while he was charged with a trust affecting the lands purchased, it must be vacated at the instance of the persons interested in the trust; the complainants are some of those persons; and they demand, that this purchase shall be rescinded. The effect of this decision will be, to reinstate the parties in their rights; the lands or some of them, will be again sold for the payment of debts; the debt due to Halsey Rogers as a creditor, will be paid; and the parties interested in the lands will lose nothing by these proceedings of the executor. The complainants also claim an account of the entire administration of this executor; their interests in the estate of Thomas Rogers, entitle them to such an account; and it is accordingly directed. Other questions in the cause, will be more properly and fully before the court, when an account shall have been taken; and for that reason, I do not discuss them, at this time.

Decree accordingly.